UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SALVADOR SILVA, | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:11cv0337 TCM |
| METROPOLITAN LIFE INS. CO., and SAVVIS COMMC'NS CORP., | ) ) ) ) |
|     Defendants. | ) ) |

## MEMORANDUM AND ORDER

Pending in this case are the opposed motions of plaintiff, Salvador Silva, to file a second and a third amended complaint.

### Background

Plaintiff is the father of Abel Silva (Abel), who was employed by defendant Savvis Communications Corporation (Savvis) at the time of his death in July 2010. (Am. Compl. ¶¶ 1, 3-4, ECF No. 31.) At all times relevant, Savvis maintained a Group Life and Supplemental Life Plan ("the Plan") for its employees. (Notice of Removal ¶ 3, ECF No. 1.) "The Plan is funded by a group policy of life insurance issued by [Metropolitan Life Insurance Company ("MetLife")] to Savvis." (Id.) Included in the Plan is Supplemental Life Insurance. (The Plan, ECF No. 14-1.) The Plan provided that, under certain circumstances, an employee had to provide evidence of insurability. (Id. at 59-60.) Such circumstances included increases in the amount of insurance above the Non-Medical Issue Amount, i.e., the lesser of three times the employee's basic annual earnings or $400,000, or an increase to an

option that was more than one level above the current amount of such insurance.  (Id. at 26, 59.)

Plaintiff alleges in his amended complaint that Abel had paid the premiums for and "satisfied all other conditions precedent" of a Supplemental Life Insurance Policy; and, at the time of his death, Abel had such a policy in the amount of $429,000 and naming Plaintiff as the beneficiary.  (Am. Compl. ¶¶ 17, 19.)  The Plan and MetLife have failed to pay Plaintiff the benefits owed under that policy.  (Id. ¶ 20.)  Plaintiff additionally alleges that Savvis and MetLife failed to provide Abel with notice of the evidence of insurability requirement "either through actual notice or through the Summary Plan Description, or failed to provide him a copy of the Summary Plan Description."  (Id. ¶ 21.)  Plaintiff alleges that Savvis and MetLife have waived the evidence of insurability requirement by (a) continuing to collect premiums without requesting such evidence and (b) not notifying Abel of the requirement.  (Id. ¶ 22-23.)

In his proposed third amended complaint,[1] Plaintiff alleges four causes of action:  (1) an action under the Plan pursuant to the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1461, and state law for benefits due Abel under a Supplemental Life Insurance policy that should have been in effect at the time of Abel's death; (2) breach of fiduciary duty as to Savvis and the Plan under ERISA or state law; (3) breach of 29 U.S.C. §§ 1022(a) and 1024(b)[2] as to Savvis and the Plan; and (4) negligence

---

[1]The Court considers Plaintiff's motion for leave to file a second amended complaint as rendered moot by his motion for leave to file a third amended complaint.

[2]Title 29 U.S.C. § 1022(a) requires that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of

- 2 -

as to Savvis.  (3rd Am. Compl., ECF No.60.)  Count II alleges that Savvis was either acting as the Plan Administrator relative to the complained-of actions or, alternatively, was acting as a fiduciary for the Plan's beneficiaries.  (Id. at 4.)  Count III alleges that Savvis was acting "as the Plan administrator for the actions described . . . ."  (Id. at 5.)  Count IV alleges that as Abel's employer[3] Savvis "had a duty to administer the Plan in a reasonable manner" and was negligent in performing this duty.  (Id. at 6.)  In his prayer in Count I, Plaintiff requests damages in the amount of $429,000,[4] pre- and post-judgment interest, penalties, and attorney's fees.  (Id. at 4.)  In Count II, he alleges a breach of fiduciary duty actionable under either common law or ERISA and asks for damages of $429,000, pre- and post-judgment interest, punitive damages, and attorney's fees.  (Id. at 4-5.)  In Count III, Plaintiff alleges only ERISA violations.  (Id. at 5.)  In Count IV, Plaintiff alleges only a state law cause of action.  (Id. at 6.)

Savvis and MetLife (collectively referred to as "Defendants") oppose the filing of a third amended complaint[5] on the grounds of futility, arguing (1) the state law claims alleged in Counts I, II, and IV are preempted by ERISA and (2) the relief sought for the ERISA

---

this title."  Section 1022(b) outlines what information must be included in the description.  Section 1024(b) sets forth the requirements for publication of the summary plan description and annual report to plan participants and beneficiaries.

[3] The complaint reads that Savvis was acting as "Plaintiff's employer."  (Id. ¶ 31.)  Plaintiff clearly meant to allege that Savvis was acting as Abel's employer.

[4] According to an exhibit attached by Plaintiff to his motion to file a second amended complaint, $429,000 was five times Abel's basic annual earnings.  (See Pl. Mot. Ex. 1 at 2, ECF No. 52-1.)  Abel requested Supplemental Life Insurance policy in 2009 for the first time after declining it when he was hired in 2004.  (Id.)

[5] They also oppose the filing of a second amended complaint; however, as noted above, that dispute is moot.

claims in Counts II and III is unavailable in an action for breach of fiduciary duty.  In support of their first argument, Savvis and MetLife contend that the Supplemental Life Insurance coverage is not severable from the rest of the Plan, which is governed by ERISA, and that Savvis acted as the Plan Administrator in enrolling employees in the Plan.  In reply, Plaintiff expresses concern that, while Savvis has stated that it is the Plan Administrator and acted as such when enrolling employees in the Plan, it has not conceded that the actions complained of in Counts II and IV were done as Plan Administrator.

## Discussion

When the court "has already filed a final scheduling order, a party seeking to amend [its] pleadings after the deadline specified in the order must show good cause."  **Ray v. Am. Airlines, Inc.**, 609 F.3d 917, 927 (8th Cir. 2010).  The scheduling order filed in this case set a deadline of July 1, 2011, for the filing of motions for the amendment of pleadings.  Plaintiff's two requests, see note 1, supra, were filed after that day.  Consequently, Plaintiff must show good cause.  Defendants do not dispute that the document attached to Plaintiff's supporting memorandum establishes such cause.  In the document, a September 2011 reference is made to "around 200 other individuals" who should have submitted, but did not, statements of health due to a problem on Savvis' end in the enrollment process.  (See Mot. Ex. at 1, ECF No. 59-1.)

Although Plaintiff has shown good cause, his motion to amend his complaint under Federal Rule of Civil Procedure 15(a) may be denied if there has been "undue delay, bad faith on [his] party, futility of the amendment or unfair prejudice to [Savvis and MetLife]."  **Crest Constr. II, Inc. v. Doe**, 660 F.3d 346, 358 (8th Cir. 2011) (internal quotations

omitted). Denying leave to amend on the ground of futility means that "the amended complaint could not withstand a Rule 12[6] motion." **In re Senior Cottages of Am., LLC**, 482 F.3d 997, 1001 (8th Cir. 2007) (footnote added). The parties focus their arguments on their respective positions on the issue of futility.

The parties apparently do not dispute that Plaintiff's state law claims are preempted by ERISA if Savvis was acting as Plan Administrator in relation to the complained-of actions. Defendants base their preemption argument on their position that Savvis was acting as the Plan Administrator at all times relevant.[7] A change in this position would work to Plaintiff's detriment; accordingly, the doctrine of judicial estoppel will foreclose any change in Defendants' position. See **Owens v. ContiGroup Cos., Inc.**, 344 S.W.3d 717, 727 (Mo. Ct. App. 2011) ("[J]udicial estoppel is in essence utilized to prevent a party from taking contradictory positions in situations where the party has actually received some sort of outcome or resolution (whether it be beneficial or merely decided on the merits in a prior

---

[6]Rule 12(b) provides for a defending party to move to dismiss a claim on grounds of, among other things, "failure to state a claim upon which relief can be granted" and "failure to join a party." Fed.R.Civ.P. 12(b)(6), (7). A complaint states a claim under Rule 12(b)(6) if its "'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" **Christiansen v. West Branch Cmty. Sch. Dist.**, — F.3d — , 2012 WL 952813, *4 (8th Cir. Mar. 22, 2012) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." **Id.** (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). This pleading standard applies to this removed case. See **Council Tower Ass'n v. Axis Specialty Ins. Co.**, 630 F.3d 725, 730 (8th Cir. 2011).

[7]Plaintiff does not dispute Defendants' argument that the Supplemental Life Insurance benefits are part of the Plan as governed by ERISA. Nor does Plaintiff address Defendants' argument that the state law claims in Count I are preempted by ERISA. In his reply memorandum, Plaintiff addresses only the preemption arguments as to Count II and IV.

proceeding)."). See also **In re Contest of Primary Election Candidacy of Fletcher**, 337 S.W.3d 137, 146 (Mo. Ct. App. 2011) ("Missouri courts in particular have consistently refused to allow litigants to take contrary positions in separate proceedings to ensure the integrity of the judicial process.").

Savvis is identified in the Plan as the Plan Administrator and, according to Defendants, acted as such when enrolling employees in the Plan. Plaintiff's state law claims against Savvis in Counts II and IV are allegations of actions taken in administering the Plan and are preempted by ERISA. See **Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.**, 497 F.3d 862, 867-68 (8th Cir. 2007).

Defendants next argue that Counts II and III must be dismissed because both are brought pursuant to 29 U.S.C. § 1132(a)(3)(B),[8] allowing for individual actions for breaches of fiduciary duty, and a § 1132(a)(3)(B) claim may not be presented as an alternative when the plaintiff also brings a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).[9] Plaintiff counters that the relief sought in Count I is for a different loss, i.e., benefits owed under the Plan, than is the relief sought in Counts II and III, i.e., benefits Abel never had a chance to receive due to Savvis' failure "to properly do its job." (Reply Mem. at 4.)

As noted above, Plaintiff alleges in Count II of his proposed third amended complaint that Savvis breached its fiduciary duty in four respects relative to evidence of insurability.

---

[8]Title 29 U.S.C. § 1132(a)(3)(B) provides that a civil action may be brought by a Plan beneficiary "to obtain other appropriate equitable relief."

[9]Title 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a Plan beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."

- 6 -

(See 3rd Am. Compl. ¶ 20.) In Count III, he alleges that Savvis "failed to reasonably apprise participants and beneficiaries of their rights and obligations under the Plan" pursuant to two statutory provisions, see note 2, supra, governing summary plan descriptions. (Id. ¶ 26.) In both counts, Plaintiff seeks damages in the amount of $429,000, interest, and attorney's fees. (Id. at 5.) In Count II, he also seeks punitive damages. (Id.)

Essentially, Plaintiff alleges that Abel would have had Supplemental Life Insurance coverage at the time of his death had Savvis properly administered the Plan and properly and promptly informed Abel of the need for evidence of insurability. Similarly, in **Pichoff v. QHG of Springdale, Inc.**, 556 F.3d 728 (8th Cir. 2009), the administrator of Dr. Pichoff's estate brought an ERISA action against Dr. Pichoff's former employer and the administrator of his ERISA plan to recover the amount of life insurance coverage that he would have had had the employer/plan administrator properly followed through with the plan underwriter. The district court had dismissed the complaint for failure to state a claim. **Id.** at 731. The Eighth Circuit considered on appeal whether the relief sought was "other appropriate equitable relief" under § 1132(a)(3)(B). **Id.** The court held that "[m]onetary relief in the form of restitution is generally available only if the action seeks 'not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'" **Id.** (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002)). "To determine whether a plaintiff requests legal or equitable relief, [the court] ask[s] whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is *specifically* identifiable as belonging in good conscience to the plaintiff." **Id.** at

- 7 -

732 (internal quotations omitted) (emphasis added).  Noting that the plan administrator and employer did not benefit from the lapse of the decedent's life insurance policy or retain funds identifiably belonging to the decedent, the court held that the relief sought by the plaintiff – compensation for the benefits that would have been paid but for the defendants' errors – was "compensatory in nature and unavailable under § 1132(a)(43)(B)." **Id.**  The court concluded:

"We share appellant's concern that her claim exists in a remedy-less 'regulatory vacuum' created by ERISA's broad preemption of state law claims and the Supreme Court's narrow interpretation of 'other appropriate equitable relief.'  Nevertheless, we are bound by the precedent of this circuit and the Supreme Court." **Id.** (interim citations omitted).  See also **Mitchell v. Robinson**, No. 1:11cv130 SNLJ (E.D. Mo., Mar. 12, 2012) (denying leave to amend complaint when plaintiffs sought to add, inter alia, ERISA claim for breach of fiduciary duty against deceased daughter's former employer and MetLife for wrongfully paying death benefits to daughter's husband and murderer; in addition to dismissing state law claims as preempted by ERISA, court dismissed breach of fiduciary duty claim on grounds that plaintiffs sought money damages only on behalf of themselves and not on behalf of the plan); **Ciecalone v. Met. Life Ins. Co.**, No. 4:10cv1054 JCH (E.D. Mo. Apr. 8, 2011) (dismissing claim for breach of fiduciary duty brought by decedent's widow for life insurance benefits she alleged she was entitled to because defendants had failed to provide decedent with information necessary to perfect his enrollment under the ERISA plan).

Plaintiff further alleges in Count III a cause of action based on Savvis's failure to provide an updated summary plan description within the five-year statutory window which

- 8 -

would have provided the necessary information relating to the Statement of Health, or evidence of insurability. In support of this argument, Plaintiff cites **CIGNA Corp. v. Amara**, 131 S.Ct. 1866 (2011). For the reasons set forth below, the Court finds Plaintiff's reliance on the case unavailing.

At issue in CIGNA Corp. was a change in the nature of the pension plan for CIGNA's employees. **Id.** at 1870. The plan originally "provided a retiring employee with a defined annuity calculated on the basis of his preretirement salary and length of service." **Id.** The new plan provided a retiring employee with a lump sum benefit. **Id.** For those employees who had earned some benefits under the original plan the value of those benefits was paid into the employee's cash balance account for the new plan. **Id.** The beneficiaries sued under ERISA. **Id.** The district court reformed the plan and ordered CIGNA to pay benefits accordingly. **Id.** at 1871. The Supreme Court held that the court could enter similar forms of relief under § 1132(a)(3)'s authorization of "other appropriate equitable relief" and remanded the case for further consideration of those forms of relief. **Id.** at 1871,1882. In so holding, the Court noted that CIGNA's description of the new plan was misleading, that the new plan saved CIGNA $10 million annually, and that the new "plan made a significant number of employees worse off . . . ." **Id.** at 1873. Noting that the case concerned a suit about the terms of a plan, the Court then outlined several principles for the lower courts to consider on remand. **Id.** at 1879-80. Those principles included the traditional power of an equity court to reform contracts. **Id.** at 1879. Plaintiff does not seek to reform the terms of the Plan. Also included was requiring CIGNA to do what it had promised, i.e., not take from

- 9 -

employees under the new plan benefits they had had under the old plan.  **Id.** at 1880.  No such relief is at issue in the instant case.

In short, the Supreme Court's holding in **CIGNA Corp.** does not affect the Eighth Circuit's holding in **Pichoff**, 556 F.3d at 732, that the relief sought by Plaintiff is unavailable as "other appropriate equitable relief."  29 U.S.C. § 1132(a)(3)(B).

## Conclusion

For the foregoing reasons, the Court finds that the proposed third amended complaint would be futile.  Therefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file a second amended complaint is **DENIED** as moot.  [Doc. 52]

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a third amended complaint is **DENIED**.  [Doc. 58]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2012.