# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **SALVADOR SILVA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11cv0337 TCM** |
| | ) | |
| **METROPOLITAN LIFE INS. CO. and** | ) | |
| **SAVVIS COMMC'NS CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

In the remaining count of his two-count First Amended Complaint,[1] Salvador Silva ("Plaintiff") seeks to hold defendants, Metropolitan Life Insurance Company ("MetLife") and Savvis Communications Corporation ("Savvis"), liable for the amount of life insurance coverage his son signed up for before his death.[2]  The life insurance benefits are part of an employee benefits plan offered by Savvis to its employees.  Savvis and MetLife argue they are entitled to summary judgment because Plaintiff's did not take the necessary steps to effectuate his enrollment.  Plaintiff argues he is entitled to summary judgment on the question of liability because any omission by his son is either the fault of Defendants or was waived by them.

---

[1]The dispute in the first count was previously resolved.

[2]Plaintiff styled the caption of his first amended complaint, filed in June 2011, as being against "Metropolitan Life Ins. Co., et al., and Savvis, Inc Comprehensive Health and Welfare Benefit Plan and Group Life and Supplemental Life Plan for Employees of Savvis Communications Corporation and Its Affiliates."  Plaintiff never requested summons to issue against either of the Plans named, nor has he requested an extension of time within which to serve either Plan.  His claims against any such entities are dismissed without prejudice for failure to timely serve them.  See Fed.R.Civ.P. 4(c)(1) (plaintiff is responsible for having summons and complaint served within time prescribed by Rule 4(m)) and 4(m) (prescribing 120 days for service).

## Background

This dispute has its origins in the untimely death of Plaintiff's son, Abel Silva (Abel), on June 27, 2010.  (Pl. Am. Compl. ¶ 1,[3] ECF No. 31[4]; Defs. Mot. Ex. at 27,[5] ECF No. 73.) Abel was then, and had been since September 27, 2004, an employee of Savvis.  (Defs. Stat.[6] ¶¶ 1, 10, ECF No. 75.)  At the time of his hiring, Abel declined enrollment in Savvis' Group Supplemental Life Insurance plan.  (Id. ¶ 11.)  He did so by marking a box by the sentence "I elect to decline the Supplemental Life plan."  (Defs. Mot. Ex. at 15.)  This box was in the section of the enrollment form labeled "Supplemental Life Insurance – Employee."  (Id.)  Also in this section was a paragraph explaining the options for electing supplemental life insurance. (Id.)  The explanation included the following caution:  "If you elect an amount that exceeds the lesser of 3 times your salary or the guaranteed issue amount of $250,000, you will need to provide evidence of good health that is satisfactory to Hartford Life[7] before the excess can become effective."  (Id. (footnote added))  In the section of the enrollment form labeled "Employee Confirmation," the first two sentences read:  "I have been given the opportunity to enroll in [Savvis'] Group Supplemental Life Insurance plans.  I understand that if I decline

---

[3]Plaintiff alleges in his first amended complaint that his son died on *July* 27, 2012.  He later alleges that his son died in June; the death certificate also lists June.

[4]The electronic case filing (ECF) number is only included in the first citation to the document.

[5]The pagination cited is that of the "ML" pagination and not the pagination of the individual parts of the motion exhibit.

[6]"Stat." refers to a party's allegations in its Statement of Uncontroverted Facts that are either undisputed by the opposing party or are established by the record.

[7]It is undisputed that MetLife replaced Hartford Life as the insurer and claims administrator in January 2008.

now, but later decide to enroll, I will be required to provide evidence of good health that is

satisfactory to Hartford Life and understand my request for coverage may be denied." (Id. at

16.)

Under the Group Life and Supplemental Life Plan for Savvis employees ("the Plan"),

Abel later could, during an annual enrollment period as determined by Savvis, "enroll for

insurance for which [he] [was] eligible or choose a different option than the one for which [he]

[was] currently enrolled." (Id. at 88.[8]) The provisions for subsequent enrollment included the

following:

> The insurance enrolled for or changes to Your [the employee's] insurance made
> during an annual enrollment period will take effect as follows:
>
> . . .
>
> •       for any amount for which You are **required** to give evidence of Your
> insurability and We determine that You are insurable, such insurance will take effect
> on the date We state in Writing,  if You are Actively at Work on that date. . . .

(Id.)

A separate section of the Plan, titled "**EVIDENCE OF INSURABILITY**" (EOI),

provided, in relevant part:

> 5.      If You make a request during an annual enrollment period to increase
> the amount of Your Supplemental Life Insurance to an option which is
> more than one level **above** Your current amount of Supplemental Life
> Insurance.

---

[8]In response to Defendants' Statements of Uncontroverted Material Facts quoting portions
of the Plan, Plaintiff admitted that the quotation was accurate but disputed that the quotation was
the "only 'pertinent' part." (Pl. Resp. at 4, ECF No. 78.)  Because Plaintiff never disputes that the
quoted portions of the Plan, or of correspondence regarding his claim, accurately repeat the
language of the quoted document, the Court will consider the quoting Statements admitted.

> If You do not give Us evidence of insurability or the evidence of insurability is not accepted by Us as satisfactory, the amount of Your Supplemental Life Insurance will not be increased.
>
> . . .
>
> 9.  If You make a late request for Supplemental Life Insurance.  A late request is one made more than 31 days after You become eligible.
>
> If You do not give Us evidence of insurability or the evidence of insurability is not acceptable by Us as satisfactory, You will not be covered for Supplemental Life Insurance.

(Id. at 104-05.)

"**You** and **Your** mean an employee who is insured under the Group Policy for the insurance described in [the] certificate." (Id. at 85.)  "**We**, **Us**, and **Our** mean MetLife." (Id.) Under the heading "ERISA INFORMATION," Savvis is listed in the Plan as both the employer and the Plan administrator. (Id. at 131.)  MetLife insures the benefits provided under the Plan, including supplemental life insurance benefits.  (Id.)  MetLife also reviews a claim for benefits and decides whether to approve or deny the claim.  (Id. at 132.)  If MetLife denies the claim, MetLife reviews any appeal of its denial.  (Id. at 133.)

The Plan further provides that:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Id. at 135.)

- 4 -

Several years later, on an online enrollment form, Abel requested supplemental life insurance with a coverage level of five times his salary.  (Defs. Stat. ¶ 13.)  Plaintiff was the sole beneficiary of this coverage, $429,000.  (Id.; Defs. Mot. Ex. at 08-09.)  The cost was $10.73 bi-monthly.  (Id. at 08.)  Abel also added his domestic partner, Jill Bitter, on his health insurance plan.  (Id. at 12.)

After Abel's death, Plaintiff made a claim against Savvis and MetLife for supplemental life insurance benefits under the Plan.  (Id. at 02-03.)  Subsequently, Savvis' representative, Terry Flynn, faxed MetLife a "Life Insurance Claim Form:  Employer's Statement" listing Basic Life benefits of $172,000 and supplemental life insurance benefits of $429,000.  (Id. at 07.)  The former had an effective date of January 1, 2005; the latter had an effective date of January 1, 2010.  (Id.)  Plaintiff's claim for supplemental life insurance benefits was denied by MetLife.  (Defs. Stat. ¶ 17.)  The November 2010 letter explaining the denial quoted paragraphs five and nine of the EOI provisions, see pages 3 to 5, supra, and read, in relevant part:

> Based on the documentation in our file, [Abel] was hired on September 27, 2004 and as such, eligible for coverage under the SAVVIS Supplemental Life Plan at that time.  In September 2004, he declined coverage under the SAVVIS Supplemental Life Plan.  However, he did elect coverage for the first time under the Supplemental Life Plan in the amount of 5 times his BAE [base annual earnings] to become effective on January 1, 2010.  According to the Plan provisions noted above, since he made a "late request for Supplemental Life Insurance" evidence of insurability is required.  The record indicates he did not submit evidence of insurability; consequently, his request for Supplemental Life Insurance coverage in the amount of 5 times his BAE was never approved.

(Id.)

- 5 -

The following month, Plaintiff appealed this adverse decision to MetLife. (Defs. Stat. ¶ 18-19; Defs. Mot. Ex. at 36.) As grounds for his appeal, Plaintiff explained: "Your basis for denying the claim was that Able [sic] Silva failed to provide you proof of his insurability. That is not true. You issued his policy, accepted his premium and therefore owe him coverage." (Defs. Mot. Ex. at 176.)

Subsequently, Plaintiff pursued his appeal and also initiated this action. As part of his appeal, Plaintiff submitted to MetLife an affidavit from Ms. Bitter attesting to Abel's general good health, lack of any suicidal ideation, and lack of any participation in inherently dangerous activities, e.g., skydiving. (Id. at 205.) Ms. Bitter also averred that, to her knowledge, Abel had not received any request for EOI or a statement of health. (Id.) Plaintiff argued that the lack of any evidence that Abel had a health problem meant that there was no indication that Abel would not have been issued supplemental life insurance had EOI or a statement of health been submitted. (Id. at 214.)

When investigating Plaintiff's claim for Abel's supplemental life insurance benefits, it was discovered that there were "around 200 other individuals who should have sent in a [statement of health] form for one reason or another, but forms were never submitted." (Id. at 242.) MetLife attributed the error to a problem at Savvis' end. (Id.) It was determined that the individuals who had not sent in a statement of health form would not be "grandfathered" into the Plan at the amounts requested. (Id.) Instead, all past participants were required to submit a form. (Id.) It was further determined that:

> [Savvis] had confirmed that, although their enrollment system does specify the [statement of health] rules, there was no monitoring of the process and the system itself did not take the applicant to the [statement of health] form, direct

them to the proper steps after it was completed or notify HR when an insured needed to fill out a form and when/how/where it was sent.

(Id.)

Also in the course of its investigation, MetLife learned that a Savvis employee completing an online enrollment form is prompted to complete a paper statement of health form if the employee elects more than three times his or her base annual earnings.  (Id. at 251.) If prompted to complete the form, the employee is also told to contact the benefits department. (Id. at 250.)  That department was located in the same building that Abel worked in; hence, he could have walked to the department and requested a form, or as had other employees, called or emailed his request.  (Id.)  Abel did not submit a statement of health form.  (Id. at 243.)

Deductions for the cost of the increased supplemental life insurance began to be deducted, however, from Abel's paycheck on January 1, 2010.  (Pl. Stat. ¶ 34.)  A check was issued by MetLife to Savvis in November 2011 for $128.76.  (Defs. Resp. Att. 1 ¶ 3, ECF No. 82-1.)  This amount represents the refund of Abel's premiums for the increased supplemental life insurance.  (Id.)  The premiums were refunded on the grounds that increased coverage never took effect.[9]  (Id. ¶ 2.)

In this action, Plaintiff alleges that Defendants (1) violated the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1461,[10] by (a) failing to timely pay

_____

[9]The amount has recently been paid into the Registry of the Court.  No interest has been paid on the refunded premiums.

[10]The Court notes that Plaintiff vigorously and steadfastly contends that his action is not an ERISA action.  This argument has been previously addressed and will not be revisited in this Memorandum and Order with the exception of his contention that the Plan violates Mo.Rev.Stat.

him the benefits owed and (b) failing to provide Abel with notice of the EOI requirement or failing to provide him with a copy of the Summary Plan Description (SPD), and (2) waived the EOI requirement by (a) continuing to collect premiums and (b) not notifying Abel that such EOI was required.  (Am. Compl. ¶ 20-23.)

Before this Court, Defendants argue that they are entitled to summary judgment because (1) Abel was required to submit EOI having requested (a) the supplemental life insurance after his initial enrollment and (b) life insurance benefits that exceeded one level above his current amount; (2) Abel did not submit the required EOI; and (3) Abel was, therefore, not covered for and entitled to supplemental life insurance benefits.  Plaintiff counters that he is entitled to summary judgment because the EOI requirement (a) was not properly noticed to the insureds, (b) is impermissibly vague, (c) was satisfied by Defendants and by evidence submitted after the fact, and (d) was waived by Defendants.

**Discussion**

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  **Torgerson v. City of Rochester**, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed.R.Civ.P. 56(c)(2)).  "The movant 'bears the initial responsibility of informing the . . . [C]ourt of the basis for its motion,' and

---

§ 376.697(4).  This statute requires that group life insurance policies include "[a] provision setting forth the conditions, if any, under which the insurer reserves the right to require a person eligible for insurance to furnish evidence of individual insurability satisfactory to the insurer as a condition to part or all of his coverage[.]"  Regardless whether this specific provision is preempted by ERISA, it is satisfied by the Plan at issue.

:

must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  **Id.** (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (last two alterations in original).  "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing a genuine issue for trial.'"  **Id.** (quoting Celotex Corp., 477 U.S. at 324).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  **Id.** (quoting Ricci v. DeStefano, 557 U.S. 557, 58 (2009)).

Plaintiff's claims in his First Amended Complaint implicate two types of civil actions authorized by ERISA to be brought by beneficiaries.[11]   One, a 29 U.S.C. § 1132(a)(1)(A) action, is to obtain relief from an administrator who refuses to supply requested information. An action under 29 U.S.C. § 1132(a)(1)(B) may be brought to "recover benefits due . . . under the terms of [the employee's] plan, . . ."

Refusal to Supply Requested Information.  Title 29 U.S.C. § 1024(b)(1)(A) requires that the plan administrator "furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the [SPD] . . . ."  The relevant regulation provides that, to comply with this requirement, "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals.  Material which is required to be furnished to all participants under the plan and

---

[11]An action under 29 U.S.C. § 1132(a)(2) may be brought to obtain "appropriate relief" for a liability for breach of fiduciary duty.  This section only allows damages to be recovered by the Plan itself.  See **Mass. Mut. Life Ins. Co. v. Russell**, 473 U.S. 134, 140 (1985).  An action under 29 U.S.C. § 1132(a)(4) may be brought to when a plan administrator fails to provide plan participants with statements relating to future pension benefits.

beneficiaries receiving benefits under the plan . . . must be sent by a method or methods of delivery likely to result in full distribution." 29 C.F.R. § 2520-104b-1(b)(1).

Defendants represent that the Plan and SPD is given to the Plan participants by Savvis. (See Defs. Mot. Ex. at 248, 251.)  Plaintiff counters that this representation is unavailing absent a signed receipt by the participants and any evidence of how the distribution was made. (Pl. Mem. at 9-10.)  In reliance on his position, Plaintiff cites a June 2011 letter from Defendants' attorney denying his claim.  This letter refers to Savvis not requiring its employees to sign a receipt for the SPD. (Defs. Mot. Ex. at 197.) The letter further states that the SPD is "always available to [its] employees." (Id.)  It is accessible on Savvis' intranet or a copy can be requested. (Id.) See **Meltzer-Marcus v. Hitachi Consulting**, No. 03 C 7687, 2005 WL 2420367, *2 (N.D. Ill. Sept. 30, 2005) (noting that copies of SPD discussing evidence of insurability requirement were available on employer's intranet site).

In support of his argument that there was no proper notice of the SPD, Plaintiff notes the lack of any evidence of "how many, which ones, or in what manner that distribution takes place, citing **Leyda v. AlliedSignal, Inc.**, 322 F.3d 199 (2nd Cir. 2003).  Plaintiff's reliance on that case is unavailing.  There, after purchasing the company the employee had worked for, the new employer held optional departmental meetings to inform the old company's employees of its benefit plan.  **Id.** at 201-02.  The SPDs, enrollment forms, and beneficiary designation forms were distributed at the meetings.  **Id.** at 202.  Attendance was not taken at the meetings; however, additional copies of the documents were left at the various facilities and were mailed to employees who were on sick leave, traveling, or on extended leave the day of the meeting.  **Id.** Plaintiff's husband did not attend a meeting and never received an SPD.  **Id.** Thinking that

his life insurance coverage with the old company remained in effect in the new company, he declined other opportunities to obtain additional life insurance.  **Id.**  After he died, his widow and beneficiary filed a claim for the benefits her husband thought he had, arguing that such benefits were due her because AlliedSignal, as plan administrator, had failed to provide her husband with the SPD.  (Id.)  The district court found "AlliedSignal's assumption that only those employees who were traveling or on leave would fail to attend the meetings was unreasonable," especially given the lack of attendance records.  **Id.** at 209.  The appellate court held that these findings were not clearly erroneous.  **Id.**  In the instant case, the SPD and Plan were distributed to employees and available on Savvis' intranet.  Neither Savvis nor MetLife assumed, as did AlliedSignal, that employees would either attend informational meetings or pick up either document at the facility's human resources department.  **Id.** Moreover, there is no requirement that employees sign a receipt for a SPD.

Additionally, the enrollment form Abel completed online prompted him to complete a statement of health form.  "[I]t would be unfair to hold the employer liable when a claimant fails to adhere to a known plan requirement through 'procrastination,' 'indecision,' or the like." **Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.**, 404 F.3d 167, 172 (2nd Cir. 2005) (requiring a showing of "likely prejudice" for an ERISA claim based on the complete absence of an SPD and finding that such prejudice is lacking when evidence shows claimant had actual knowledge of requirement at issue).  See also **Schad v. Stamford Health Sys., Inc.**, 358 Fed.Appx. 242, 244 (2nd Cir. 2009) (employee's written notice of requirement of evidence of insurability form "was sufficient to render harmless any shortcomings of the SPD," although there was no evidence that the defendants had provided employee with necessary form).

Defendants properly provided Abel with a SPD.

Recovery of Benefits.  Title 29 U.S.C. § 1132(a)(1)(B) authorizes a civil action for the recovery of benefits due under an ERISA plan.  When, as in the instant case, an entity "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" the resulting "dual role creates a conflict of interest." **Metro. Life Ins. Co. v. Glenn**, 554 U.S. 105, 108 (2008).  This conflict then "'must be *weighed as a factor* in determining whether there is an abuse of discretion.'" **Id.** at 111 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  This is true even when, as here, the entity is an insurance company and not the employer itself.  **Id.** at 114-15.  The conflict does not, however, change the standard of review from deferential to *de novo*.  **Id.** at 115.  Rather, the conflict is "but one factor among many that a reviewing judge must take into account."  **Id.** at 116.  "Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts – which themselves vary in kind and in degree of seriousness – for [courts] to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review."  **Id.**

In **Glenn**, "[t]he [Supreme] Court acknowledged the existence of a conflict should be weighed more heavily 'where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.'" **Khoury v. Group Health Plan, Inc.**, 615 F.3d 946, 953-54 (8th Cir. 2010) (quoting Glenn, 554 U.S. at 117).  "The conflict should be given less weight '(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling

off claims administrators from those interested in firm finances . . . .'" **Id.** at 954 (quoting Glenn, 554 U.S. at 117).

Plaintiff contends that MetLife's conflict should be given more weight because it "refused to wall claims team from financial aspects of the company" and because the claims team that denied his seminal claim also denied his appeal. (Pl. Mem. at 1, 2, ECF No. 81.) As noted above, however, the conflict created by MetLife's dual role is *a* factor to consider when determining whether there has been an abuse of discretion. Although there has been no showing that "active steps" have been taken to wall off the team deciding the claims from the financial department, there has also been no showing of a history of biased claim decisions or of any other consideration, aside from the dual role itself, that would increase the likelihood that MetLife's financial interests affected its decision. See **Green v. Union Sec. Ins. Co.**, 646 F.3d 1042, 1053 (8th Cir. 2011) (finding no evidence insurance company's conflict of interest influenced its denial of benefits when there was no indication company had history of biased claim decisions). Cf. **Chronister v. Unum Life Ins. Co. of Am.**, 563 F.3d 773, 776 (8th Cir. 2009) (noting that insurance company's conflict of interest was one of several factors pointing to abuse of discretion; conflict evidenced by company's recognized history of biased claims administration, including arbitrary denial of claims and failure to follow own claims-handling procedure). Accordingly, the Court will give MetLife's conflict some weight when determining whether there has been an abuse of discretion. See **Khoury**, 615 F.3d at 954 (holding that "district court was required to give conflict some weight, but the existence of the conflict alone [was] not determinative" when record contained no evidence of claims administration history or of claims administrator's "efforts to reduce potential bias and to

promote accuracy") (internal quotations omitted); **Manning v. Am. Republic Ins. Co.**, 604 F.3d 1030, 1039 (8th Cir. 2010) (giving conflict of interest "some weight" when record lacked evidence of biased claims administration or of efforts to reduce risks of such administration). However, because there is substantial evidence to support the denial of Plaintiff's claim, as set forth below, the Court will not give the conflict of interest alone determinative weight. See **Hankins v. Standard Ins. Co.**, 677 F.3d 830, 837 (8th Cir. 2012) (finding "conflict of interest alone [was] not determinative where there exist[ed] substantial evidence on the record supporting the denial of benefits").

Additionally, a decision to deny benefits reviewed for an abuse of discretion is to "be affirmed if it is reasonable, meaning it is supported by substantial evidence," i.e., evidence that "is more than a scintilla but less than a preponderance." **Green**, 646 F.3d at 1050. "The requirement that the plan administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.'" **Id.** (quoting Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009)).

Defendants' reason for denying Plaintiff's claim for benefits is that Abel did not complete the necessary statement of health form and, consequently, he was never approved for enrollment in the supplemental life insurance plan. Under the terms of the Plan, Abel had to submit EOI if he wished to (a) increase the amount of his supplemental life insurance to an amount which was greater than one level above his current amount or (b) request supplemental life insurance more than thirty-one days after he became eligible. Several years

after he became eligible, he wished to increase his life insurance benefits to an amount five times greater than his current level.  He did not, however, submit EOI, including a completed statement of health form.[12]  Also under the terms of the Plan, had Abel submitted EOI, his requested coverage would not take effect until MetLife stated so in writing.[13]

When considering whether Defendants' interpretation of the Plan leading to their denial of Plaintiff's claim is reasonable, the Court is guided by five factors:  "(1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation."  **Manning**, 604 F.3d at 1041-42. There is nothing in the record before the Court to suggest that consideration of any of these five factors, including the fifth, detracts from Defendants' interpretation of the Plan.  Although

---

[12]Plaintiff contends that any failure by Abel to submit EOI is an affirmative defense, the proof of which is Defendants' burden to carry.  Plaintiff is mistaken.  Under the unambiguous terms of the Plan, EOI is a condition precedent to a late enrollment for supplemental life insurance benefits and/or to an enrollment for an amount in excess of a certain amount.  See e.g. **Colrado v. Metro. Life Ins. Co.**, No. 8:10-cv-1615-T-30TBM, 2011 WL 1899253, *4 (M.D. Fla. Mar. 16, 2011), adopted by, 2011 WL 1899236 (May 19, 2011) (referring to EOI as condition precedent to receiving optional life insurance benefits).

[13]Plaintiff argues that Defendants may not rely on the Plan provision that Abel's enrollment in the supplemental life insurance policy was not effective until approved by MetLife because that position was not included in the denial letter, citing **Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit Plan**, 686 F.3d 1135, 1141 (10th Cir. 2012).  In that case, the insurer denied the plaintiff's claim for benefits under one section, i.e., the "Healthcare Benefits" section, and then relied on a different section, i.e., the "Life and Accident Insurance Benefits" section.  **Id.**  In the instant case, Defendants have never varied from their reliance on the "Evidence of Insurability" provision of the Plan.

there is evidence that, during the review of Plaintiff's claim, it was discovered that approximately 200 individuals should have sent in a statement of health form but did not and that those individuals would now be required to, there is no evidence that this corrigendum in processing employees' enrollment requests reflects any inconsistency in interpreting the Plan. Plaintiff argues that there is inconsistency in that the 200 individuals are being allowed to submit statement of health forms, but he is not being allowed to submit one for Abel. As noted by Defendants, however, the distinction is different in that Abel is no longer an employee; the other individuals are. Moreover, under the unambiguous terms of the Plan, the supplemental life insurance coverage Abel requested was not effective until his application, including EOI, was approved by MetLife. See **Kehoe v. Ryder Truck Rental, Inc.**, No. 05-2139, 2006 WL 2414197, *4 (E.D. La. Aug. 17, 2006) (finding no abuse of discretion in denial of claim given plan's provision that application for increased coverage did not take effect until insurer approved evidence of insurability). It was not.

Nor was it unreasonable to require Abel to obtain the statement of health form from the benefits department. There is no showing that the department was difficult to reach or contact, or that a phone or email request for the form would not have been successful. Plaintiff takes issue with Defendants' failure to send him the statement of health form after Abel's death. He is not a participant in the Plan. And, there is no support for his contention that the Plan must entertain evidence of Abel's insurability submitted after Abel's death.

Arguments similar to Plaintiff's were rejected in **Meltzer-Marcus**, supra, when the court denied a widow's claim for supplemental life insurance benefits her husband had elected to purchase through his employer's group insurance policy. Although he knew that he had to

- 16 -

submit proof of insurability to qualify for the increased benefits, the husband had never submitted such.  2005 WL 2420367 at *2.  His widow faulted the insurer for the omission, contending that it was the insurer's responsibility to provide her husband with the necessary forms.  **Id.**  The insurer countered by pointing to language in the policy that the form could be obtained from the employer.  **Id.**  The court noted that neither the husband nor the plaintiff had received the plan-required documentation from the insurer approving the husband's selection of supplemental life insurance.  **Id.**  Additionally, there was some evidence that the employer was deducting premiums for the supplemental life insurance.  **Id.**  The court found that, absent the husband's return of the evidence of insurability form and the insurer's approval of that evidence, the insurer's decision to deny the widow's claim was a reasonable interpretation of the policy and must be upheld.  **Id.** at *5.  The court further found that the payment of premiums for the increased insurance benefits was "not dispositive" and did not "override" the policy's requirements of the submission of an evidence of insurability form and the insurer's approval of that submission.  **Id.** at *6.  The court rejected the widow's argument that her husband reasonably concluded he did not need to submit evidence of insurability based on the insurer's failure to send him the necessary form, finding that such argument disregarded policy language (a) requiring the submission of evidence of insurability for the husband's desired amount of life insurance; (b) decreeing that the excess coverage was not effective until the insurer approved the submitted evidence, and (c) stating that an employee may obtain the evidence of insurability form from his employer.  **Id.** See also **Cocker v. Metro. Life Ins. Co.**, No. 09-14299, 2011 WL 5838218, *5-16 (E.D. Mich. Nov. 18, 2011) (finding that rejection of beneficiary's claim for life insurance benefits was not arbitrary and

capricious when employee was informed when enrolling for additional life insurance that proof of good health was required and that form for such proof could be printed; decision to deny additional life insurance benefits was consistent with plan language, and employer's mistaken confirmation of additional life insurance was not plan modification); **Hargis v. Idacorp, Inc.**, No. H-04-1692, 2005 WL 6456898, *11 (S.D. Tex. Oct. 26, 2005) (holding that decision of claims administrator was reasonable and fair given the employee's failure to submit evidence of insurability and the language in the SPD and plan policy that the requested increased benefits would not be effective until the insurer approved their evidence).

Plaintiff contends that even if Defendants' interpretation of the Plan is reasonable, they waived the EOI requirement by deducting premiums for the supplemental life insurance benefits Abel requested.

"A waiver is 'a voluntary and intentional relinquishment of a known right.'" **Farley v. Benefit Trust Life Ins. Co.**, 979 F.2d 653, 659 (8th Cir. 1992) (quoting J. Calamari and J. Perillo, The Law of Contracts, § 11-29(c) at 491 (3rd ed. 1987)) (assuming, without deciding that "a waiver of policy provisions could be asserted in an ERISA case").  It is the plaintiff's burden to show there is a waiver. **Hargis**, 2005 WL 6456898 at *7 n.1.

Defendants erred by deducting premiums for six months for supplemental life insurance benefits for which Abel had not been approved.  But, an error is not always a waiver.  "Certainly, someone made an error; either the employer made a mistake in deducting the premium payments without receiving approval, or the defendant [insurer] received the premiums and simply forgot to insist on evidence of insurability.  But there is no evidence that the defendant was aware of the amount of the [employee's] annual earnings and therefore

could not know that the amount of coverage he elected exceeded five times those earnings. . . . There is no evidence that the defendant was attempting to reap an unjust benefit by extracting premiums from the decedent when it knew it had a defense to coverage and waited until a claim was made before cancelling the excess coverage amount." **O'Connor v. Provident Life and Accident Co.**, 455 F.Supp.2d 670, 678 (E.D. Mich. 2006).  In **O'Connor**, the premiums had been collected for the twenty-month period between the deceased employee signing an enrollment form for supplemental life insurance and his death, although the election form stated that premiums would not be deducted until election was approved. **Id.** The court found that, although the insurer was accountable for the misinformation on the enrollment form about when premiums would be deducted, there was no evidence that the insurer was aware of the "true facts" or intended the plaintiff or the employee to act on the misrepresentation. **Id.** at 679.  "Because of the plain language in the policy and the enrollment form, [the employee] could not have believed reasonably that he could obtain guaranteed issue life insurance in an amount of death benefits that exceeded five times his earnings." **Id.** at 680. Any confusion created by the deduction of premiums for excess insurance did not overcome the clear limitation in the plan documents.  **Id.**

Similarly, in **Hargis**, applying the same definition of waiver as did the Eighth Circuit in **Farley**, supra, the court rejected the plaintiffs' argument that defendants – the deceased son's former employer and group policy insurer – had waived their EOI requirement by taking premiums for increased benefits from the son's paycheck for thirteen months.  2005 WL 6456898 at *2, 7.  To be found to have intentionally waived its right to require evidence of insurability, the court determined that the insurer had to have known (a) of the son's failure

to submit the evidence of insurability form and (b) that it was accepting premiums for the additional insurance. **Id.** at \*7. Although the insurer's knowledge of the first element could be assumed, knowledge of the second could not. **Id.** See also **Crosby v. Rohm & Haas Co.**, 480 F.3d 423, 431 (6th Cir. 2007) (rejecting claim brought by beneficiary of employee's life insurance policy for amount of benefits shown on employee's enrollment worksheet based on incorrect formula used by insurer, and for which deductions had been made from employee's paycheck); **Lawler v. UnumProvident Corp.**, No. 05-CV-71408, 2006 WL 2385043, \*3 (E.D. Mich. Aug. 17, 2006) (acceptance of premiums for eight years was not waiver of unambiguous plan provisions).

Plaintiff further argues that Defendants should be equitably estopped from denying him Abel's supplemental life insurance benefits because they withheld premiums without informing Abel that he needed to submit EOI, which Abel could have done had he been so advised.

"In general, the doctrine of equitable estoppel requires proof of words or deeds (or sometimes omissions to speak or act) that create a misleading impression upon which a reasonable person would rely." **Lincoln Gen. Hosp. v. Blue Cross/Blue Shield of Neb.**, 963 F.2d 1136, 1141 (8th Cir. 1992) (internal quotations omitted).

The doctrine of equitable estoppel was found to be unavailing in a similar case, **Colrado**, 2011 WL 1899253 at \*4, in which the employee attempting to enroll in optional life insurance benefits program had not provided EOI when electing such insurance and the lack of such evidence was not discovered by either the employer or the insurer until after the employee's death. The employer had not recognized the necessity of such insurance and had

not requested such evidence, but had confirmed the employee's optional election and had deducted premiums for such from paychecks for two years. **Id.** "Even if it is assumed that the provisions of the Plan requiring evidence of insurability and for enrollment are ambiguous, this is not a case in which the plan administrator has made representations to the participant that constitute an informal interpretation of the ambiguity.[14] The only representation as such was made by [the employer] through a form used by [the employee] to confirm her benefit elections for 2007. While [the employee] may well have relied on this confirmation form and the fact that premiums were deducted by [the employer] from her pay, those circumstances alone are not enough to invoke this remedy." **Id.** at *7 (footnote added). Any neglect by the employer and the insurer did not alter the terms of the plan placing the burden for providing the required EOI on the employee. **Id.** at *8. See also **Sippel v. Reliance Std. Life Ins. Co.**, 128 F.3d 1261, 1263 (8th Cir. 1997) (forwarding by employer to insurer of premium for employee's converted ERISA policy, together with premiums deducted from paychecks of other employees, did not work an estoppel against insurance company denying benefits under the converted policy to employee's widow when employee was prevented from applying for converted policy by unexpected death); **Fink v. Union Central Life Ins. Co.**, 94 F.3d 489, 492 (8th Cir. 1996) (rejecting widow's claim for benefits under group life insurance policy issued to husband; although insurer of husband's employer's ERISA plan had informed him he would be insured until certain date and husband had then died two weeks earlier, widow's

---

[14]There is no allegation that any representative of either Defendant communicated with Abel about his enrollment for supplemental life insurance benefits.

"estoppel claims fail[ed] because common-law estoppel cannot be used to obtain ERISA benefits that are not payable under the terms of the ERISA plan").

Additionally, as was the case in **Fink**, the relief sought by Plaintiff – a monetary award of the amount of life insurance benefits Abel requested – is not available. "Monetary relief in the form of restitution may be considered equitable only if 'seek[s] not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'" **Calhoon v. Trans World Airlines, Inc.**, 400 F.3d 593, 596 (8th Cir. 2005) (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002)) (alteration in original). "Monetary damages that are compensatory in nature are traditionally considered to be legal relief because they 'focus on the plaintiff's losses and seek to recover in money the value of the harm done' to the plaintiff instead of punishing 'the wrongdoer by taking his ill-gotten gains.'" **Id.** (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th Cir. 1999)).  The litmus test in determining whether the sought-after monetary relief is equitable or legal in nature is whether the harm done "is measured by loss to the plaintiff or the gain to the defendant and whether the money sought is specifically identifiable 'as belonging in good conscience to the plaintiff' and can 'clearly be traced to particular funds or property in the defendant's possession.'"  **Id.** at 596-97 (first quotation omitted) (second quotation from Great-West, 534 U.S. at 213).   An example of loss to the plaintiff is overpayment of premiums and the resulting claim for the specific amount of overpayment. **Id.** at 597.  Additionally, when determining whether the relief sought is legal or equitable in nature, the status of the defendant, whether it be a fiduciary or not, is not relevant to the germane inquiry of what type of relief is generally available.  **Id.** at 598.  In the case before

the court, the monetary relief requested was found to be legal in nature because it sought to impose personal liability on the defendant, was "measured by the plaintiff's loss, and [did] not involve traceable funds that belong to the plaintiff and [were] being unlawfully held by the defendant." **Id.**  Consequently, the court rejected the claim of a former participant in an ERISA plan for reimbursement of medical bills that had accumulated after the participant's health insurance coverage had ended, regardless of the coverage default having occurred as a result of payment coupons being sent to participant's former address although participant had informed the insurer that he wished to maintain coverage under COBRA and had informed the insurer's representative of his new address.  See also **Pichoff v. QHG of Springdale, Inc.,** 556 F.3d 728, 731-32 (8th Cir. 2009) (finding that widow of plan participant could not bring ERISA action for "appropriate equitable relief" when relief requested was reinstatement of benefits her husband's estate would have received absent alleged breach of fiduciary duty by former employer and plan administrator by failing to notify husband he could extend his life insurance benefits and of how to do so).

The instant case is unlike the one before the court in **Papenfus v. Flagstar Bankcorp, Inc.,** 517 F.Supp.2d 969 (E.D. Mich. 2007), cited by Plaintiff.  In that case, the court found that the plan documents were ambiguous; " a reasonable person" could have believed from the plan documents that the plan administrator was responsible for asking for evidence of good health, which could have included information contained in "'questionnaires, physical exams, or written documentation as required by Us.'"  **Id.** at 971.  A "reasonable person" could also have believed, after reading the plan, that the plan administrator would inform an enrollee if an application was incomplete.  **Id.** at 973.  Although the employee was never asked for proof

of good health of his family member to be enrolled and had not submitted such, premiums were regularly deducted from his paycheck. **Id.** at 974. Additionally, he was sent at least two annual benefit statements showing he had the supplemental insurance and was never informed his employee application was incomplete. **Id.** The court found that defendants had misrepresented material facts by sending the employee benefits statements and not informing him that his application was incomplete when the plan could reasonably be read to require such. **Id.** at 974. These considerations were *in addition to withholding premiums* and were relevant because the plan provisions at issue were ambiguous. **Id.** at 973.

## Conclusion

For the foregoing reasons, Plaintiff's arguments why he should receive the supplemental life insurance benefits for which Abel enrolled regardless of Abel having failed to satisfy a properly-noticed condition precedent are unavailing. As noted by the Eighth Circuit, claims such as Plaintiff's are defeated by the "remedy-less 'regulatory vacuum' created by ERISA's broad preemption of state law claims and the Supreme Court's narrow interpretation of 'other appropriate equitable relief.' Nevertheless, [the Court is] bound by the precedent of th[e] [Eighth] [C]ircuit and the Supreme Court." **Pichoff**, 556 F.3d at 732.

What is undefeated, however, is Plaintiff's claim for the withheld premiums.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of Metropolitan Life Insurance Company and Savvis Communications Corporation is **GRANTED** as to the claims of Salvador Silva in Count II for supplemental life insurance benefits and **DENIED** as

to any claims of Salvador Silva for the premiums for such insurance withheld from the pay of Abel Silva.  [Doc. 74]

**IT IS FURTHER ORDERED** that the motion for partial summary judgment of Salvador Silva is **DENIED** as to his claims in Count II for supplemental life insurance benefits and **GRANTED** as to any claims he has for the premiums for such insurance withheld from the pay of Abel Silva.  [Doc. 77]

**IT IS FURTHER ORDERED** that the parties are to file, **within fifteen days of the date of this Memorandum and Order**, briefs addressing the question of to whom the withheld premiums are to be paid and whether interest on such premiums is owed.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  10th  day of December, 2012.